HARDY *v.* STATE.[*]

(Division B. June 7, 1926.)

[108 So. 727. No. 25781.]

1. HOMICIDE.
    In prosecution for murder, admitting testimony of details of previous altercation between deceased and accused *held* prejudicial error.

2. HOMICIDE.
    Previous difficulty between deceased and person accused of murder and threats made at such time are admissible.

3. CRIMINAL LAW. *Instruction that malice is implied from nature of weapon, and that use of deadly weapon is evidence of malice, in-*

*correct as omitting deliberate use of weapon, held not misleading, in view of other instructions.*

Instruction in murder trial that malice is implied from nature and character of weapon used, and that use of deadly weapon not in necessary self-defense is evidence of malice, while incorrect as omitting "deliberate" before the words "use of deadly weapon," *held* not misleading in view of other instructions.

4. HOMICIDE. *Whether presumption of guilt from deliberate use of deadly weapon has been overcome is question for jury.*.

It is question for jury whether presumption of guilt from deliberate use of deadly weapon has been overcome by evidence so as to change its character from an unexplained killing with deadly weapon.

5. WITNESSES. *Permitting state in murder prosecution to cross-examine husband of deceased as to statements relative to getting divorce and to contradict such testimony in rebuttal held proper (Code 1906, section 1923 [Hemingway's Code, section 1583]).*

Under Code 1906, section 1923 (Hemingway's Code, section 1583), permitting state on cross-examination in prosecution for murder to question husband of deceased relative to statements made to another as to getting divorce from his wife, and in rebuttal to introduce witness contradicting such testimony, *held* proper.

6. WITNESSES.

Witness in murder prosecution may be interrogated on cross-examination as to interest, bias, or prejudice, to bring out existing or previous relationship of witness towards crime or accused.

7. CRIMINAL LAW.

Credibility of witnesses is always issue of fact for jury.

---

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 930, n. 93; p. 1053, n. 93; Homicide, 30CJ, p. 142, n. 74 New; p. 189, n. 83; p. 196, n. 80, 83; p. 328; n. 1 New; p. 346, n. 88; Witnesses, 40Cyc, p. 2656, n. 13; p. 2667, n 67; p. 2681, n. 40; p. 2683, n. 49.

APPEAL from circuit court, Second district, of Jones county.

HON. R. S. HALL, Judge.

Carrie Hardy was convicted of murder, and she appeals. Reversed and remanded. .

*D. B. Cooley* and *H. E. J. Ross,* for appellant.

I. The basis of the first and second assignments of error is the admission, over objection of the appellant, of certain testimony of the witnesses Adam Hill and W. D. Hendry. Adam Hill was asked on cross-examination if he did not have a conversation with Hendry prior to the killing in which he threatened the life of the deceased. This question was objected to by the appellant. He answered that he did not make the threat. Hendry was introduced by the state in rebuttal and testified that Adam Hill did make the threat in the conversation with him in his store, prior to the difficulty.

Hendry testified that at the time they were talking about Adam getting his divorce. This alleged conversation took place in the absence of the appellant. So far as the record shows she had no knowledge of it whatever.

We submit that the court committed fatal error in the admission of this testimony for the following reasons: (1) Witnesses cannot be contradicted as to their own statements about immaterial matters. (2) Threats made out of the presence of the accused, even if made by a co-conspirator, are inadmissible before a conspiracy is established. There was no charge of conspiracy in this case and no evidence tending to establish one. It is hard to conceive upon what theory the court permitted this testimony to go to the jury. See *Jeffries* v. *State,* 28 So. 948; *Williams* v. *State,* 19 So. 826; *Drake* v. *State,* 29 Tex. App. 269.

II. The court erred in admitting the testimony of Hendry as to the threat made by the witness, Adam Hill, without first showing a conspiracy existed between the witness and the appellant. As above stated, there was no charge of a conspiracy and not a word of testimony tending to establish one. See *Rich* v. *State,* 86 So. 770.

III.   The basis of the third assignment of error is the admission of the testimony of Sallie Crosby and Joe Marshall, her son, about a previous difficulty between appellant and the deceased.   This difficulty is alleged to have occurred on the Sunday night before the killing on Wednesday night.   The two difficulties were wholly disconnected.   This court has condemned testimony of this character in a number of cases.   *Rich* v. *State*, 86 So. 770; *Hughes* v. *State*, 38 So. 33; *Raines* v. *State*, 33 So. 19.

IV.   Another objection we offer is to the instructions for the state submitting to the jury the question of whether appellant was guilty of murder.   There is an entire absence of evidence of a deliberate design on the part of the appellant to effect the death of the deceased. The evidence, we submit, overwhelmingly shows that the appellant acted without malice.   It shows that appellant went on a lawful mission to take the witness Adam Hill his supper.   The evidence shows that it was her custom to do this.   It shows that she did not know the deceased would be present.   The evidence further shows that appellant undertook to leave the place of the difficulty before the deceased came up, in order to avoid trouble. The testimony of the appellant shows that she acted in necessary self-defense.   Her testimony is corroborated by the eye-witness Adam Hill.   The facts, as detailed by these two witnesses, were not contradicted by the state.

This court has held in several cases that where there is an absence of evidence of deliberate design on the part of the appellant to effect the death of the deceased, it is error to submit to the jury the question of whether or not the appellant is guilty of murder.   *Jones* v. *State*, 54 So. 724; *Staiger* v. *State*, 70 So. 690.

The court erred in giving an instruction for the state that the use of a deadly weapon in a difficulty, not in necessary self-defense, is, in law, evidence of malice. This is not a correct announcement of the law on this

question. The correct rule is that the *deliberate* use of a deadly weapon, in a difficulty, not in necessary self-defense, is, in law, evidence of malice. This instruction omits the word *deliberate,* which, we contend, is fatal error. There can be no malice without deliberate design.

Again, by this instruction, the district attorney invoked in behalf of the state the presumption of malice which arises from the killing with a deadly weapon. Our court has held that it is the duty of the state to introduce some of the eye-witnesses to a homicide; and that if the state fails to do so and the defendant introduces the eye-witnesses, then the state is bound by their testimony. *Patty* v. *State,* 88 So. 498.

This court has held that the giving of an instruction on the presumption of malice from the use of a deadly weapon, where all the facts and circumstances attending the killing were fully shown by the testimony, is error. *Godwin* v. *State,* 19 So. 712; *Patty* v. *State, supra; Cumberland* v. *State,* 70 So. 696.

*Rufus Creekmore,* Special Assistant Attorney-General, for the state.

I. Counsel object first to the action of the court in permitting the district attorney to cross-examine Adam Hill on the question of whether he did not state to Mr. Hendry that "he wanted a divorce from his wife and was going to get it, and if she did not quit fooling with him he was going to kill her;" and upon Adam's denial of such statement to the witness, to the further action of the court in permitting the witness Hendry to contradict him by testifying that such statement was made by Adam to him. Counsel say that this was an immaterial matter and one irrelevant to the issue and so the court should not have permitted it to be introduced in evidence.

On this point counsel cite *Jeffries* v. *State,* 28 So. 948; and *Williams* v. *State,* 19 So. 826, which cases held that where a witness is questioned on cross-examination as

to the irrelevant and collateral matters he cannot be impeached as to this testimony by proving contradictory unsworn statements made by him out of court.

This general rule announced in the *Williams case, supra,* is not applicable here because the question which arises in the instant case is not what the general rule of law may be, but whether the facts in this particular case come within that particular rule of law or the exemption thereto. The rule is also well settled that a witness may be cross-examined as to his interest in the outcome of the cause or to his feeling or bias against any party to the cause. This right of examination of the witness is specifically given by the statute itself. See section 1583, Hemingway's Code (section 1923, Code of 1906); and Underhill on Criminal Evidence (2 Ed.), sec. 222, p. 405.

These statements made by Adam and about which he was asked on his cross-examination were such as would show his bias or his interest in the suit and, therefore, they were not collateral and the court was not in error in permitting the examination on these points.

The facts distinguish the case at bar from the Williams case because in that case the cross-examination of the witnesses with reference to the statements made by her had no bearing on the case whatsoever, and could in no way tend to show her interest, prejudice or bias in or toward any one concerned with the case or its outcome; while here they go to the root of the matter. *Newcomb v. State,* 37 Miss. 383, is directly in point. See to the same effect: *McMasters* v. *State,* 81 Miss. 374, 33 So. 2; *Upchurch* v. *State,* 96 Miss. 586, 51 So. 810; *Magness* v. *State,* 106 So. 195, 63 So. 352; *Rouse* v. *State,* 107 Miss. 427, 85 So. 501.

II.  Counsel next object to the action of the court in admitting the testimony of the state's witnesses as to the difficulty between Sallie and Carrie on the Sunday preceding the killing. They argue that here were admitted the details of the previous disconnected difficulty and

that the action of the court in so doing was fatal error. They cite the cases of *Rich* v. *State,* 86 So. 770; *Hughes* v. *State,* 38 So. 33; and *Raines* v. *State,* 33 So. 19, in support of their argument.

It is true that as a general rule the details of the previous disconnected difficulty will not be admitted in evidence in such a case as this. The rule is also equally well settled that testimony to the effect that there was a previous difficulty and that threats were made by the defendant against the life of the decedent may be introduced to show motive or malice, and especially where the evidence is conflicting for the purpose of showing which party was the aggressor. When we consider the testimony of the two state witnesses on this particular point, we do not find that any details of a difficulty were gone into. In this connection it will be noted that this previous difficulty grew out of the same cause as did the killing and it will further be noted that this difficulty occurred just a short time before the killing occurred, and that the same instrumentality was employed in the actual killing as was used by the defendant in this difficulty.

In view of these facts, we say that this testimony was competent and admissible for the purpose of showing motive, express malice of the defendant at the time of the difficulty as shown by her threat to kill and her attempt to carry out the said threat, and which express malice continued up to the time of the killing, and especially is it admissible for the purpose of showing which was the aggressor at the time of the killing. *Brown* v. *State,* 88 Miss. 166, 40 So. 737; *Burks* v. *State,* 101 Miss. 87, 57 So. 367; *Huggins* v. *State,* 103 Miss. 227, 60 So. 209.

III. Counsel next object to the action of the court in giving instructions for the state which submitted to the jury the question of defendant's guilt of murder. They argue that there is absolutely no evidence to show malice or deliberate design to effect the death of Sallie Hill, but the presumption of malice arises from the unex-

plained killing of a human being by the use of a deadly weapon.

Also bear in mind that express malice was proved in the case at bar and in this respect it differs from the cases cited by counsel. In our opinion the case of *McGehee* v. *State,* 104 So. 150, is controlling on this statement of facts.

IV. Counsel objects to one instruction because it leaves out the word "deliberate," and say that for this reason the instruction conflicts with the law defining manslaughter. This objection is not tenable because the state requested and obtained an instruction defining manslaughter. Then, too, the other instructions requested and received by the state instructed the jury fully as to the fact that there must be a deliberate design to effect the death, etc., before the defendant could be convicted; and when all of the instructions are taken together and read as a whole, they propound to the jury the correct rule on this point. See *Green* v. *State,* 28 Miss. 687; *Lamar* v. *State,* 63 Miss. 265; and *Riley* v. *State,* 109 Miss. 286.

ANDERSON, J., delivered the opinion of the court.

Appellant was indicted and convicted in the circuit court of the Second district of Jones county of the murder of Sallie Hill, and sentenced to the penitentiary for life. From that judgment appellant prosecutes this appeal.

Adam Hill was the husband of the deceased, Sallie Hill. He was night hostler at the lumber manufacturing plant of the Gilchrist Fordney Company in the city of Laurel in said county and district. At the time of the homicide Adam Hill was paying a good deal of attention to appellant, and of course his wife, Sallie Hill, was objecting. He took his evening meal at the lumber plant where he worked. Appellant for probably more than a year had been bringing him this meal prepared by her.

He was still furnishing his wife, Sallie, some support, but appellant appears to have been the woman he was mainly interested in. Appellant and Sallie Hill at the time of the homicide had met at the lumber plant where Adam Hill worked. Appellant was there with his evening meal, while his wife was there to get some oil from the supply house of the lumber company. The two women had an altercation as the result of jealousy, each being jealous of the other on account of Adam Hill's relations to them. An altercation took place between appellant and Sallie Hill, during which the former stabbed the latter to death with a knife.

The state for conviction relied on the fact of the killing of the deceased by appellant with a deadly weapon in connection with conflicting statements on the part of the latter before and at the trial as to how the homicide took place—as to the weapon she used, and whether she used her own knife or that of the deceased, and other questions of fact attending the killing. The principal witness for appellant was Adam Hill, the husband of the deceased. We do not deem it necessary to go further into the details of the homicide.

Appellant assigns as error the action of the court in admitting the testimony of the state's witnesses as to a difficulty between appellant and deceased which took place on Sunday preceding the homicide on Tuesday. The court permitted the state over the objection of the appellant to show by two witnesses that on Sunday before the homicide on Tuesday of the same week appellant and deceased met and had an altercation; that they abused each other without restraint; that during the altercation appellant drew a knife on the deceased and threatened to kill her, and thereupon deceased ran and got out of appellant's way; that appellant threatened to kill deceased in the future if the latter did not refrain from interfering with appellant and deceased's husband. This evidence was introduced for the purpose of showing the state of mind between the parties as having

bearing on the question as to who was the aggressor in the difficulty resulting in the homicide. Clearly the fact of the previous difficulty as well as the threat on the part of appellant were facts having a bearing on that question. Appellant did not question the right of the state to show the previous difficulty and the threat, but objected to the particulars and details of the difficulty. On the trial of a defendant on the charge of murder evidence of the details of a previous difficulty between the deceased and the defendant, in no way connected as to time with the difficulty resulting in homicide, is inadmissible. Only the fact of the previous difficulty and threats made at the time are admissible. The details cannot be gone into. Oftentimes to do so would be most unfair and prejudicial to the defendant. *Raines* v. *State,* 81 Miss. 489, 33 So. 19; *Hughes* v. *State* (Miss.), 38 So. 33; *Rich* v. *State,* 124 Miss. 272, 86 So. 770. The evidence of the details of the previous difficulty admitted by the court, we think, were such in this case as to be prejudicial to the rights of the appellant. The fact, if it was a fact, that appellant was the aggressor in the previous difficulty, that she then assaulted the deceased with a deadly weapon, that the deceased ran to escape death or great bodily harm at the hands of the appellant, and that appellant threatened to kill deceased if the latter did not stop interfering with her plans, were all calculated to be most influential with the jury and prejudicial to appellant. For the error in admission of this testimony the case must be reversed.

Appellant assigns as error the giving of an instruction for the state in this language:

"The court instructs the jury for the state that malice is implied by law from the nature and character of the weapon used, and that the use of a deadly weapon in a difficulty not in necessary self-defense is in law evidence of malice."

Appellant criticises the instruction because the word "deliberate" is left out of the instruction before the

words "use of a deadly weapon." The criticism is well founded. But in view of the other instructions given for the state and for appellant, the jury could not have been misled on account of that word being left out of this instruction. Appellant criticises the instruction further on the ground that it had no place in the case because this is a case where the facts of the homicide were all in evidence and therefore no presumption on account of the use of a deadly weapon by appellant could be indulged in. When death is inflicted by the use of a deadly weapon and the killing is admitted by the defendant, it is assumed to be a malicious killing and therefore murder, and to change the character of the killing there must appear from the evidence in the case facts which explain the killing and change its character from an unexplained killing with a deadly weapon, and where the evidence relied on to change such presumption is unreasonable and improbable, the verdict of the jury adjudging guilt will not be disturbed; it is a question for the jury whether the presumption of guilt from the deliberate use of a deadly weapon has been overcome by such conflicting evidence. *McGehee* v. *State,* 138 Miss. 822, 104 So. 150; *Johnson* v. *State* (Miss.), 105 So. 742. We think therefore this instruction, with the addition of the word "deliberate" in the proper case, was appropriate under the facts in this case.

Adam Hill, husband of the deceased, was asked on cross-examination by the state if he had had a conversation with one Hendry at a particular time and place prior to the homicide, in which he stated to Hendry that he was trying to get a divorce from his wife, that he did not know whether he would succeed or not, but if she fooled with him he would kill her or get killed himself. This question was asked the witness over the objection of appellant. The witness denied making the statement to Hendry. In rebuttal the state introduced Hendry to contradict the testimony of Adam Hill in that respect. Hendry was permitted to testify over appellant's ob-

jection that on the occasion inquired about of the witness, Adam Hill, the latter told him that he wanted a divorce from his wife, Sallie Hill, and was going to get one if he could, and if she fooled with him he would kill her. It is argued by appellant that the court erred in admitting this evidence because it was on a collateral and immaterial issue. To sustain that position *Williams* v. *State,* 73 Miss. 820, 19 So. 826, is mainly relied on. To justify the action of the court the state relies on section 1923, Code of 1906 (Hemingway's Code, section 1583); Underhill on Criminal Evidence (2 Ed.) section 223, p. 405; *Newcomb* v. *State,* 37 Miss. 383; *Mackmasters* v. *State,* 81 Miss. 374, 33 So. 2; *Upchurch* v. *State,* 96 Miss. 586, 51 So. 810; *Magness* v. *State,* 106 Miss. 195, 63 So. 352; *Rouse* v. *State,* 107 Miss. 427, 65 So. 501. The statute (section 1923, Code of 1906; Hemingway's Code, section 1583), so far as applicable here, provides that any witness may be examined touching his interest in the cause under trial, and his answers may be contradicted and his interest may be established by other evidence. We think the evidence involved was admissible under the plain provisions of this statute. However, resort to the statute is not necessary to justify its admission. At common law feelings, bias, and relationship of a witness are not collateral issues. The witness may be interrogated on cross-examination as to his interest, bias, or prejudice, provided the sole purpose is to bring out and elucidate the existing or previous relationship, feeling, or conduct of the witness toward the crime or the accused. *Newcomb* v. *State, supra,* is squarely in point in favor of the state's position. In that case the court permitted one of the witnesses for the defendant to be asked on cross-examination whether on a certain occasion the witness stated that if the defendant (who was the son of the witness) did not kill deceased she would not own him as her son. The witness denied making the statement, and other testimony was introduced to contradict her on this point. It was held

that this evidence was admissible as going to the credibility of the witness; that for that purpose the predicate could be laid for contradiction by cross-examination, and the state would be permitted to introduce contradicting evidence. The opinion in that case is full and exhaustive; it is well reasoned and thoroughly elucidates this question. The other cases relied on by the state set out above tend to sustain the action of the court.

We do not think *Williams* v. *State, supra,* sustains appellant's contention. In that case Margaret Kelly, a witness for the defendant, testified as to the facts of the killing which she saw. She was asked by the state on cross-examination if on the morning of the homicide, at the body of deceased in the presence of certain witnesses (naming them), she did not say to Elsie Ross (wife of deceased), "I sent you word not to let your husband come down here. They made a plot to kill him three weeks ago." She answered that she made no such statement. The state introduced a witness who testified that she did make the statement. Defendant objected to such cross-examination of the witness, Margaret Kelly, and to the rebuttal testimony contradicting her. This court held that the action of the trial court in that respect was error; that the evidence brought out was on collateral issue and prejudicial to the defendant. The evidence held to be objectionable in that case, it is apparent at once, was not directed to the question of the bias or interest of the witness, Margaret Kelly. It was not aimed at her credibility as a witness. On the contrary, it was brought out for the purpose of showing in the form of hearsay evidence, the guilt of the defendant. The ground of the decision of the court in that case was that guilt could not be shown by the proof of a fact collateral by hearsay evidence. We do not think that case is in conflict with the Newcomb case and the authorities cited in support of the text of Underhill on Criminal Evidence above referred to. The credibility of the witnesses in a cause is always an issue of fact for

the jury. It is not a collateral question, but one of the issues in the case often having much bearing and force on the main issues of fact. The testimony in question was that character of testimony, and it was not error for the court to admit it.

Appellant contends that the evidence was insufficient to sustain the verdict of murder rendered by the jury. Beside the positive facts testified to by the witnesses for the state and for appellant, the evidence was such as the jury might have reasonably drawn the inference that appellant was guilty of murder. We think, therefore, it was a question for the jury whether appellant was guilty of the crime of murder.

We find no merit in appellant's other assignment of errors. Whatever irregularities and errors there were, manifestly they were without harm to appellant.

For the one error alone in admitting the details of the previous difficulty the judgment of the court below is reversed and remanded.

*Reversed and remanded.*